**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-177 |
| | § | |
| ALEXANDER LYNN | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Alexander Lynn's ("Lynn") Motion for Compassionate Release (#65), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#68). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On September 10, 2015, a federal grand jury in the Eastern District of Texas returned a two-count Indictment charging Lynn in Count 1 with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and in Count 2 with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Subsequently, on March 15, 2016, Lynn pleaded guilty to Count 2 of the Indictment pursuant to a binding plea agreement. On September 19, 2016, the court sentenced Lynn to 97 months' imprisonment, followed by a five-year term of supervised release. Lynn is currently housed at Federal Medical Center Lexington, located in Lexington, Kentucky ("FMC Lexington"). His projected release date is July 8, 2022.

II.   Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, ___ S. Ct. ___, No. 20-5997, 2020 WL 7132458 (Dec. 7, 2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.

2

*United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his

administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Lynn emailed a request for compassionate release to the Warden of FMC Lexington on September 6, 2020, which was based on Lynn's perceived need to provide care to his elderly parents.  Subsequently, Lynn's attorney sent the warden a letter requesting a sentence reduction on Lynn's behalf on the basis of Lynn's "heightened risk of contracting COVID-19" due to his underlying medical conditions, as well as "his elderly and sick parents' urgent need for [Lynn] to serve as their primary caregiver."  On December 7, 2020, Warden F. Quintana denied Lynn's request, noting:

> [T]here are certain criteria which you must meet in order to be considered for [a Reduction in Sentence].  Providing care for your parent[s'] medical issues does not meet the criteria as specified in the program statement.

The Government "does not contest Lynn's efforts to exhaust his administrative remedies." Although Lynn may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of

4

the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C. § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

Lynn asserts that "18 U.S.C. 3582(c)(1)(A) lacks an 'applicable policy statement issued by the Sentencing Commission' when a motion is brought by an inmate rather than the BOP." Lynn further maintains that district courts have "broad, independent discretion to determine what circumstances constitute 'extraordinary and compelling reasons' warranting an inmate's release." In support of his contentions, Lynn relies on the holdings of various courts of appeal outside the Fifth Circuit.  *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf [ ] § 1B1.13 does not apply."); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (holding that because

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

§ 1B1.13 addresses motions and determinations of the Director of the BOP and not criminal defendants, "the Sentencing Commission has not yet issued a policy statement 'applicable' to [the defendant's] request"); *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (holding that "U.S.S.G. § 1B1.13 is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. Sept. 25, 2020) ("[I]f a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it.").  In contrast to the courts of appeal cited by Lynn, the United States Court of Appeals for the Fifth Circuit has held that "[a]lthough not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, ___ F.3d ___, No. 20-40381, 2021 WL 37493, at *2 (5th Cir. Jan. 5, 2021); *see United States v. Rivas*, ___ F. App'x ___, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to USSG § 1B1.13).

The policy statement outlined in § 1B1.13 of the USSG refers only to motions filed by the BOP director because the policy statement, last amended on November 1, 2018, predates the First Step Act, enacted on December 21, 2018, which allows federal inmates to file motions under 18 U.S.C. § 3582(c) for the first time.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c).  In light of 18 U.S.C. § 3582(c), which requires a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission," the court sees no reason to treat motions for a sentence reduction filed by

defendants differently from motions filed by the BOP Director.  *See* 18 U.S.C. § 3582(c)(1)(A). As the Fifth Circuit recognized in *Thompson*, § 1B1.13 still provides guidance to the courts as to the "extraordinary and compelling reasons" that may merit a sentence reduction.

    A.   <u>Medical Conditions</u>

    In the instant motion, Lynn contends that he is eligible for compassionate release due to his medical conditions, specifically that he suffers from a "stable 5mm calcified nodule" in his lung, an "enlarged heart," sinus arrhythmia, hypertension, and is overweight.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

    Here, according to Lynn's Presentence Investigation Report ("PSR"), prepared in 2016, he informed Probation that he did not have any health concerns.  At that time, Lynn, who is 5 feet 9 inches tall, weighed 170 pounds, giving him a body mass index ("BMI") of 25.1, indicating that he was slightly overweight.  More recent BOP medical records, dated February 4, 2020, reveal that Lynn's BMI is 22.8, which indicates that his weight is within a normal range and that he is neither overweight nor obese according to the Centers for Disease Control and Prevention ("CDC").  Lynn's BOP records confirm that he has sinus arrhythmia and "a stable 5 mm calcified nodule in the left suprahilar lung."  Yet an x-ray dated February 10, 2020, states that there is

7

"[n]o radiographic evidence for an acute cardiopulmonary process" and that there was "[n]o change in radiographic appearance of the chest compared to the prior exam." Although Lynn claims that he has high blood pressure, there is no indication in his medical records that he has ever been diagnosed by a physician with high blood pressure or hypertension. Moreover, Lynn's BOP records show that he is classified as a medical Care Level 1 inmate. According to BOP's Clinical Practice Guidance, "Care Level 1 inmates are less than 70 years of age and are generally healthy," but "[t]hey may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months." As part of its investigation, Probation received the following information from the BOP:

> Inmate Lynn, Alexander, 23387-078 is a Care Level 1 inmate who has no significant chronic illness. He is not assigned to any Chronic Care Clinics, nor is he prescribed any medications at this time. His medical problem list shows no obesity, bronchitis, or diabetes. His only problems listed are low back pain, pain in unspecified limb, allergic rhinitis, otitis media, myopia, confirmed case COVID-19, and mononeuropathy of upper limb. Currently, none of these conditions require medical treatment.

Even with his confirmed medical conditions, Lynn's medical summary does not meet the criteria listed above. None of these medical conditions is terminal or substantially diminishes his ability to provide self-care. *See Thompson*, 2021 WL 37493, at *2. Indeed, Lynn's BOP records reveal that he is housed in general population, has no medical restrictions, has regular duty assignments, is cleared for food service, and his current work detail is in the Unicor Cable Factory. Thus, Lynn has failed to establish that qualifying medical conditions exist that would constitute extraordinary and compelling reasons to reduce his sentence.

8

B.   <u>Age</u>

Lynn also references his age as grounds for compassionate release.  The USSG provides

that extraordinary and compelling reasons exist as to a defendant's age when:

> [t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious
> deterioration in physical or mental health because of the aging process; and (iii) has
> served at least 10 years or 75 percent of his or her term of imprisonment,
> whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1(B).  Here, according to Lynn's PSR, he is 53 years old, well below

the minimal threshold of 65 years.  Moreover, there is no indication that he is experiencing a

serious deterioration in his physical or mental health.

Alternatively, 18 U.S.C. § 3582(c)(1)(A)(ii) allows modification of a term of imprisonment

for age-related reasons when:

> the defendant is at least 70 years of age, has served at least 30 years in prison,
> pursuant to a sentence imposed under section 3559(c), for the offense or offenses
> for which the defendant is currently imprisoned, and a determination has been
> made by the Director of the Bureau of Prisons that the defendant is not a danger to
> the safety of any other person or the community as provided under section 3142(g);
> and that such a reduction is consistent with applicable policy statements issued by
> the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(ii).  For the reasons stated above, as well as the fact that he has not

served at least 30 years in prison, Lynn does not meet the alternative requirements for age-related

reduction in sentence set forth in 18 U.S.C. § 3582(c)(1)(A)(ii).  Therefore, compassionate release

is not warranted on the basis of Lynn's age.

C.    <u>Family Circumstances</u>

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). In his motion, Lynn moves for compassionate release "based on his elderly and sick parents' urgent need for [Lynn] to serve as their primary caregiver." This falls outside the scope of USSG § 1B1.13 cmt. n.1(C), which applies to minor children and registered partners. *United States v. Jenkins*, No. CR 6:03-50, 2020 WL 5984401, at *3 (S.D. Tex. Oct. 6, 2020) (noting that "caring for a sick and/or aging parent is not a qualifying 'family circumstance' under U.S.S.G. § 1B1.13(1)(A)."); *United States v. Johnson*, No. 2:13-231, 2020 WL 3000500, at *2 (S.D. Tex. June 2, 2020) (holding unless the elderly parent is the caregiver of defendant's own minor children, an elderly parent is not covered under USSG § 1B1.13); *United States v. Goldberg*, No. CR 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) ("While certainly admirable, a desire to help care for one's elderly parents does not qualify as an 'extraordinary and compelling reason.' . . . After all, '[m]any, if not all inmates, have aging and sick parents.'") (quoting *United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) (movant's desire to help his adult daughter and her mother and to become a caregiver for his elderly mother and mentally challenged sister do not

10

present the type of "familial relations . . . covered by the Application Notes 1(C) or 1(D) to U.S.S.G. § 1B1.13.").

Moreover, Lynn has not shown that he is the only available caregiver.  His PSR reveals that he has a sister who lives in Pennsylvania, from whom he is estranged, but his parents remain in regular contact with her.  *See United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) (denying request for relief and noting that "the court has before it no information as to why other relatives cannot care for [the defendant's] parents").  In any event, Lynn advised Probation that upon his release from prison, he plans to live with his fiancée at her residence in Springboro, Ohio.  Probation also points out that Lynn submitted a release plan to his parents' residence in the Western District of New York in September 2020, but it was denied. The probation officer added that she spoke with the probation officer in the Western District of New York, who stated that "their district does not intend to approve Mr. Lynn's request to live with his parents if the release plan is resubmitted."  Thus, at present, Lynn has no acceptable release plan.  Hence, Lynn fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons for early release from prison.

     D.    "Other" Reasons

Lynn's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the

11

position to determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Lynn for any "other" reason.  It is well settled that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Lynn's situation.  Lynn expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of January 22, 2021, the figures available at www.bop.gov list 53 inmates (out of a total inmate population of 1,107) and 12 staff members at FMC Lexington as having confirmed positive cases of COVID-19, 700 inmates and 57 staff members who have recovered, and 9 inmates who have succumbed to the disease.  Indeed, according to Probation, as confirmed by Lynn's medical records, he tested positive for the disease on December 8, 2020, was placed in isolation, and has now recovered from the virus after having an asymptomatic case.

Thus, it appears that the facility where Lynn is housed is handling the outbreak appropriately and providing adequate medical care.

Although Lynn expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Lynn, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 2021 WL 37493, at *3 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present

extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").   Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Lynn, have already contracted and recovered from the virus.  *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) ("Courts have repeatedly found that defendants who contract COVID-19 and recover are not among those who fall within the guidelines or demonstrate 'extraordinary and compelling reasons,' meriting a reduction in their sentence."); *United States*

14

*v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at \*3 (S.D. Tex. June 19, 2020) ("Having already contracted and fully recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility.'" (quoting U.S.S.G. § 1B1.13)).  Thus, Lynn has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and release him from prison.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Thompson*, 2021 WL 37493, at \*3, n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.  Lynn's offense of conviction entails his possession of child pornography.  After being contacted by Lynn's employer about detecting child pornography on Lynn's company-owned computer, Federal Bureau of Investigation agents approached Lynn.  Eventually, Lynn admitted to accessing a cloud storage account with "thousands" of child pornography files and watching "a lot" of them.  Lynn stated that he primarily viewed the pornography on his personal laptop computer.  He further stated that much of the child pornography saved to his laptop depicted female children who were around his daughter's age, 12 years old.

Agents located 209 videos and 62 images of child pornography from multiple sources on Lynn's personal laptop.  The child pornography featured depictions of prepubescent minors, including infants and toddlers, and portrayals of sadistic and masochistic conduct.  Although Lynn claimed to have attempted to stop viewing child pornography, he had downloaded approximately 50 files containing child pornography on the morning of the agents' search.  Further, he told

15

agents that he knew that his possession of the files was illegal.  In total, Lynn admitted to possessing 15,737 images of child pornography.  In addition, he received and distributed child pornography utilizing a Dropbox account.

Lynn later confirmed to Probation that he knew his conduct was wrong and he tried to stop prior to getting caught, but it was difficult.  There is no reason for the court to conclude that Lynn could refrain from such conduct now, especially if left unsupervised with his 90 and 86-year-old parents at their residence in Big Flats, New York.  He is a sophisticated consumer of sexually explicit images of minors who holds bachelor of arts and science degrees in chemistry and social science.  Lynn's entire work history has been in the computer and information technology field.  *See United States v. Pitcock*, 2020 WL 3129135, *4 (S.D. Fla. June 12, 2020) (denying motion for release notwithstanding health conditions because the defendant possessed and transported a large volume of child pornography, noting that "while the Defendant has served a majority of his sentence and has eleven months remaining, there is no evidence before the Court that he has completed any treatment regimen or programs that would inform whether the Defendant is no longer a danger"); *United States v. Sims*, 2020 WL 2838611, *6 (W.D. Wash. June 1, 2020) ("In today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [the defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct[, trading in child pornography].").  Here, in view of the circumstances surrounding his offense of conviction, the court cannot conclude that Lynn would not pose a danger to any other person or to the community, if released from prison.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures

in response to COVID-19.  In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 20,664 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal

associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  In this instance, there is no reason to believe that Lynn would not revert to his possession and distribution of child pornography if released from prison at this time.

In short, Lynn has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

III.   Conclusion

Consistent with the foregoing analysis, Lynn's Motion for Compassionate Release (#65) is DENIED.

18

SIGNED at Beaumont, Texas, this 22nd day of January, 2021.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

19